MARTIN ROHRER et al., Plaintiffs-Appellants, v. VINCENT L. TRAINA et al., Defendants-Appellees.

Second District (2nd Division) No. 75-119

Opinion filed February 13, 1976.

Donald A. Manzullo, of Fearer & Nye, of Oregon, for appellants.

Robert A. Frederickson, of Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

Plaintiffs, Martin and Kay Rohrer, appeal the finding of the Circuit Court of Ogle County that the contract they entered into with the defendants, Vincent and Carol Traina, was void as a wager contract and therefore unenforceable.

On August 6, 1973, plaintiffs and defendants entered into a written contract concerning cattle owned by plaintiffs which provided, in part:

"Dr. Traina guarantees to Mr. Rohrer a price of 0.65 cents (sixty-five cents) per pound under hoof on or about March 1st, 1974 for more or less 120 heads of cattle owned by Mr. Rohrer. If the price of beef at that particular time should be less than

sixtyfive cents per lbs. Dr. Traina will pay the difference up to $10,000.—(ten thousand dollars) to Mr. Rohrer. If the sale price will be over sixtyfive cents a pound the profit will be shared equally between Dr. Traina and Mr. Rohrer.

Dr. Traina will pay the difference in case of loss not later than April 1st, 1974, and if paid later eight per cent interest will be added to the amount of loss."

After plaintiffs wrote to defendants advising them of the date and place of sale, plaintiffs sold the cattle at auction February 26, 1974, at approximately 42¢ per pound for a net price of $39,503.88. Had the cattle sold for 65¢ per pound, the net price would have been $59,696.00. Accordingly plaintiffs demanded a payment of $10,000 from defendants. Defendants refused to pay and plaintiffs instituted suit upon the contract. By way of affirmative defense, defendants alleged, *inter alia*, that the parties had "entered into this supposed contract as a gambling agreement." It is undisputed that plaintiffs were not registered on any commodities exchange or with the Secretary of State, nor were they licensed futures brokers, which would have exempted them from the operation of the applicable section of the gambling statutes.

After a bench trial the court found that this contract fell under section 28—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, §28—1(a)):

"(a) A person commits gambling when he: * * *

(4) Contracts to have or give himself or another the option to buy or sell, or contracts to buy or sell, at a future time, any grain or other commodity whatsoever * * * where it is at the time of making such contract intended by both parties thereto that the contract * * * shall be settled, not by the receipt or delivery of such property, but by the payment only of differences in prices thereof * * *."

The court therefore held that the contract was void and unenforceable, and entered judgment for the defendant.

It is the plaintiffs' contention that the subject of the instant contract, cattle, does not fall under "any grain or other commodity whatsoever." In support of their contention, plaintiffs cite cases which are either using very old dictionary definitions of the term commodities (*Peterson v. Currier*, 62 Ill. App. 163 (1896), *aff'd*, 163 Ill. 528 (1896), "includes everything movable which is bought and sold, except animals," 62 Ill. App. 163, 169) or cases which dealt with other issues and statutes, and in which the portions relevant to the instant case are dicta. *People v. Federal Security Co.*, 255 Ill. 561, 563 (1912), "all movable chattels which are the objects of commerce, unless, perhaps, animals may be excepted."

■■ The current edition of Webster's Third New International Dictionary (1966) defines commodity as: "economic good, * * * as distinguished from services, * * * commodities such as meat, fats and sugar." Ballantine's Law Dictionary (3d ed. 1969) defines commodity as "* * * an article of commerce; a movable and tangible thing produced or used as the subject of barter or sale." It is interesting to note that as the definition of "commodity" has broadened, so has the phrase the legislature uses in the statute; it has gone from "any grain or other commodity" (*Pearce v. Foote*, 113 Ill. 228 (1885)) to "any grain or other commodity whatsoever." Earlier courts construing this statute have given it a liberal construction. "They ought rather to have a just, if not liberal, construction, to the end the legislative intention may be accomplished,—to prohibit all dealings in options in grains or other commodities." (*Pearce v. Foote*, 113 Ill. 228, 239 (1885); *Bates v. Woods*, 225 Ill. 126, 133 (1906).) The evil was and is operations. on margins, and not merely certain types of grain contracts. "We think it clear that the intent of the legislature here was, not merely to protect grain, stocks and gold against dealings of a certain kind, but to prevent a known evil, viz., dealing in options as well in other things, as in grain, stocks and gold." (*McKeon v. Wolf*, 77 Ill. App. 325, 338 (1898).) That case held that "commodities" included marketable bonds. We hold that by the use of the broad language "any commodity whatsoever," the legislature intended that a contract such as the one in the instant case would come within the statute, and that cattle or beef on the hoof is a commodity.

■■ Plaintiffs' second contention is that this contract does not come within the statute because plaintiffs owned the cattle and by this contract defendants purchased an interest in the cattle, hence this is not solely a wager on future market price. However, plaintiffs have failed to show what interest the defendants were given in the cattle, and we can perceive none. The parties had no intention of delivering or receiving the cattle, but intended to settle on the differences existing between the market price at the time of settlement and the time of contracting. This is a wager contract of the kind intended to be prohibited by the legislature under the statute and is therefore void and unenforceable. *Jacobus v. Hazlett*, 78 Ill. App. 239 (1898); *R.E. Pratt & Co. v. Ashmore*, 224 Ill. 587 (1906); 20 Ill. L. & Pr. *Gambling & Lotteries* §14, n. 29 (1956).

For the foregoing reasons, the judgment of the Circuit Court of Ogle County is affirmed.

Affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.