### BURNS v. DISTRICT OF COLUMBIA.
#### No. 128.

Municipal Court of Appeals for the District of Columbia.

Dec. 1, 1943.

---

J. Robert Esher, of Washington, D. C., for appellant.

Vernon E. West, Principal Asst. Corp. Counsel, of Washington, D. C. (Richmond B. Keech, Corp. Counsel, and Milton D. Korman and Edward A. Beard, Asst. Corp. Counsel, all of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Defendant was convicted of vagrancy under Sections 22—3302 to 22—3305, 1940 Code, and has appealed.

On the evening of July 3, 1943, defendant was observed by a police officer mingling with the crowd at the Greyhound Bus Terminal. Later, shortly after midnight, he was again observed by the officer at the same terminal. He was followed by the officer to the Trailways Bus Terminal and there he again mingled with the crowd on the loading platform. He was then placed under arrest. He admitted to the officer that he had been a pickpocket and had a long record of convictions for that offense. He claimed, however, that he had recently arrived in Washington, had remained two or three days looking for work, and was seeking a bus to return to Philadelphia. He exhibited a Greyhound bus ticket for that place. At the time of his arrest, the Trailways bus to Philadelphia had left and the crowd on the loading platform was boarding a bus leaving for Richmond, Virginia.

The arresting officer testified to the foregoing facts and also that defendant, when arrested, admitted that he had come to Washington to pick pockets, but had not done so.

Defendant had in his possession the key to a hotel room. He had not checked out of the hotel, nor had he packed or removed his personal belongings. The manager of the hotel testified that defendant had occupied a room at the hotel for several days on each of nine other occasions during the preceding four months, and that he had registered three days before his arrest under the name of "F. C. Hall."

The dispatcher at the Trailways Terminal also testified to defendant's actions there and to the fact that when arrested he was moving about on the loading platform in a crowd which was attempting to board a bus for Richmond, Virginia.

Testifying in his own behalf defendant denied that he had said to the officer that he came to Washington to pick pockets and repeated his claim that he came to Washington to look for work, but did not describe his efforts in that direction. He admitted the accuracy of a record of his criminal activities which, offered by the prosecution, showed convictions in a number of eastern cities for pickpocketing and larceny from the person. He testified that he had been unable to continue his work as a bartender because of an injury to his leg, and had been performing light work on his father-in-law's farm in New Jersey where he lived with his wife; that during the time he was in Washington he was out of work and not lawfully employed.

No objection was made by defendant to the admissibility of the testimony given by the officer or to the record of convictions when introduced as a part of the prosecu-

tion's case. The transcript does not show that a motion to dismiss was made before defendant's testimony was given.

■ We find no error in the conviction. The statute imposes on the prosecution the duty of proving, by confession or conviction, defendant's criminal record. Here, when the record of convictions was produced at the trial, defendant admitted that he was the person referred to therein.

■ It was also incumbent on the prosecution to rrove that he was found loitering in a public·place and failed to give a good account of himself. To loiter is "to spend time idly."[1] For a person intending to go to Philadelphia, holding a ticket to that destination on the Greyhound Lines, to move about after midnight in a crowd on a loading platform at another bus terminal where a bus is leaving in an opposite direction is "to pass time idly." And when that person has been observed mingling with crowds on the loading platform at another bus terminal on two other occasions on the same night, and has the key to his hotel room in his pocket, can it be denied that he failed to give a good account of himself?

■ As defendant admitted that "during the time he was in Washington he was out of work and was not lawfully employed", the only remaining issue to be tried was whether he had lawful means of support. On his person he had $65 in cash and a gold watch, but how these came into his possession was not disclosed. He claims that as his statement that he had been doing "light work" on his father-in-law's farm in New Jersey was not denied by any other evidence, he sustained the burden of proving that he had "lawful means of support realized from a lawful occupation or source."

He gave no detail of his work or compensation. His testimony, according to the record, was that he "had been doing" this work, but during what period, or when it ceased, was not disclosed. Nor did he attempt to explain why he had made ten trips to Washington, each of several days' duration, in a period of four months.

■ Testimony, although uncontradicted, may be insufficient to sustain the burden of proof, if under the surrounding circumstances it is so improbable as to be unworthy of belief. Here the inherent weakness of a statement lacking in corroborative detail, coming from one whose testimony in other respects was highly improbable, was sufficient to justify a finding of its legal insufficiency.[2]

■ We have also considered and find no error in a continuance of defendant's trial from July 6 to July 9 at the request of the prosecution. That was a matter in the discretion of the trial court which was not unreasonably exercised.

After the argument of this appeal the United States Court of Appeals for the District of Columbia, in the case of Mitchell v. United States, App.D.C., 138 F.2d 426, decided October 25, 1943, held that the rule rendering inadmissible the confession of an accused who is not after his arrest taken promptly before a magistrate or committing officer, was applicable to a voluntary confession made immediately after arrest and not under the restraint of an illegal detention.[3] In view of the possibility that the decision in the Mitchell case might affect our decision in this case and in the cases of Clark v. District of Columbia, D.C.Mun.App., 34 A.2d 711, and Hayes v. District of Columbia, D.C. Mun.App., 34 A.2d 709, which had also been argued and were awaiting our decision, we ordered the three cases reargued. Our opinions in the Clark and Hayes cases have been filed and are now referred to for a full statement of our views.

■ Defendant's arrest occurred on July 4. In the District of Columbia, that day being Sunday, the following day, Monday, was a legal holiday.[4] He was taken into court on Tuesday, July 6th. We take judicial notice that the Criminal Division of the Municipal Court was in session on July 5 for the arraignment and trial of persons held under arrest and unable to give collateral or bond. We, therefore, hold that the evidence of the arresting officer as to admissions made to him by the de-

---

[1] Stephens v. District of Columbia, 16 App.D.C. 279; State v. Tobin, 90 Conn. 58, 96 A. 312; People v. Berger, Sup., 169 N.Y.S. 319; State v. Jasmin, 105 Vt. 531, 168 A. 545.

[2] Durocher v. Myers, 84 Mont. 225, 274 P. 1062.

[3] In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. —, the rule was applied in a situation where the confession was obtained after an unwarranted delay in bringing the accused before a magistrate.

[4] Code 1940, 28—616.

fendant after arrest was improperly received.

■ But this does not in our judgment require a reversal. The elements of the offense required by the statute to be established by the prosecution were prima facie proven by the record of his convictions, the evidence of loitering, and the circumstantial incidents of defendant's conduct on the night in question. Any possible deficiency was supplied by defendant's own testimony.

It is true that defendant denied his alleged admission to the officer that he had come to Washington to pick pockets. His purpose in coming, and the fact that he did not pick pockets after his arrival, are immaterial under our statute. Under certain circumstances the receipt of incompetent evidence in a trial by the court, though irrelevant, may be prejudicial and require reversal. Here the officer's statement and defendant's denial presented a question of credibility of defendant as a witness. His material evidence was directed to one issue, whether he had lawful means of support realized from a lawful occupation or source. We think defendant's own testimony, considered with other evidence in the case, so completely discredited his evidence on this issue, on which he had the burden of proof, that the erroneous admission of the officer's statement is immaterial.[5]

Affirmed.

HOOD, Associate Judge (dissenting).

I agree with the majority that under the ruling of the McNabb case, as interpreted by the Mitchell case, the statements obtained by the officer were inadmissible because of the delay in taking appellant to court; but I do not agree that the reception of such inadmissible testimony was harmless error.

Appellant admitted his past criminal record and admitted being arrested in the instant case while waiting or loitering in a public place. But two other elements were necessary to complete the offense of vagrancy, namely, failure to give a good account of himself when found so loitering and lack of lawful employment and lawful means of support realized from a lawful occupation or source. The burden of proof of lawful employment and means of support was on him. He took the witness stand to give a good account of why he was waiting around the station and to prove his lawful employment and means of support.

But before he took the stand, the officer had been permitted to testify that appellant said he "came to Washington to pick pockets." In my opinion, nothing could have been more prejudicial. In the face of this incriminating admission could his explanation of why he was at the bus station carry any weight with the trial judge? There was no testimony as to lawful employment or means of support except that of appellant. Can it be supposed that his testimony on this point was received by the trial judge free of the prejudice and suspicion created by the officer's statement?

Certainly, if the trial judge believed that appellant told the officer he came here to pick pockets, no weight would be given to appellant's testimony in his own behalf. Testimony of the officer not only destroyed any credibility to be given appellant's testimony but had the effect of impliedly contradicting his claim to being at the station for a good reason and to possessing lawful employment.

I see no escape from the conclusion that there was received in evidence inadmissible testimony of so prejudicial a nature as to prevent appellant receiving a fair and impartial trial. This not only justifies but requires a reversal.

It is pointed out by the majority that the inadmissible testimony was received without objection. However, the trial occurred prior to the decision in the Mitchell case, and this circumstance, in my opinion, warrants departure from the strict rule of confining appellate review to questions raised at the trial.

---

[5] Penwell v. District of Columbia, D.C. Mun.App., 31 A.2d 891.